[Civ. No. 15226. First Dist., Div. Two. Feb. 18, 1953.]

ERNEST F. PERRY, Respondent, v. J. HAROLD MAGEE, Appellant.

Phillip Barnett and Rodney H. Robertson for Appellant.

Edmund S. Barnett for Respondent.

NOURSE, P. J.—On October 3, 1949, Perry (plaintiff, cross-defendant and respondent) entered into a conditional sales contract with Magee (defendant, cross-complainant and appellant) for the purchase of the Magee Poster Drier for $5,098.50—$3,300 down payment and $158.51 to be paid in 11 monthly installments beginning December 1, 1949. On March 3, 1950, Perry through his attorney notified Magee by letter he was rescinding the contract upon the ground of misrepresentation and breach of warranty of quality, offering to return the machine upon the condition that his money be refunded. Defendant did not act and on May 18, 1950, plaintiff filed his complaint pleading six causes of action, the first and fourth being dismissed by plaintiff at the trial. The remaining causes are:

(2) Damages sought for breach of oral warranties allegedly made by defendant. (3) Damages for alleged oral fraudulent representations made by defendant. (5) Rescission of written contract sought for breach of oral warranties allegedly made by defendant. (6) Rescission of written contract sought for alleged fraudulent representations made by defendant.

Because of the written waiver of oral warranties plaintiff would be limited to his action for rescission without damages for alleged fraud under the rule of *Speck* v. *Wylie*, 1 Cal.2d 625 [36 P.2d 618]. Hence, this appeal should be properly limited to the issue of rescission raised in the fifth

and sixth causes of action. But more definitely it should be limited to the fifth cause—for rescission of the contract because of breach of oral warranties—since the sixth cause which was based on fraudulent representations is not supported by the slightest evidence of fraud.

Plaintiff on the entire complaint sought judgment against defendant for $11,304.51 plus 7 per cent interest on said sum from March 3, 1950, the date of rescission. Defendant's demurrer was overruled and on June 16, 1950, he filed his answer and cross-complaint denying all material allegations of plaintiff's complaint and cross-complained for breach of the written contract, asking for the return of the machine, retention of moneys previously paid by plaintiff and attorneys' fees. June 25, 1951, the court entered its minute order rendering judgment for plaintiff and thereafter filed its findings and entered judgment July 9th, declaring the contract null and void and granting plaintiff recovery of the money paid to defendant on the contract with 7 per cent interest from March 3, 1950.

The situation out of which the action arose is in brief: For about 18 years respondent Perry was in the business of making posters and placards such as are generally seen on outdoor billboards by the silk screen printing process. Huff, a graduate engineer with about six months of business experience, became interested in the Merco tube, designed somewhat like a fluorescent lighting tube, learned the tubes were being successfully used in a poster drier in the poster plant of Marshall Bros. in Seattle. Huff contacted defendant Magee who was engaged in the wholesale business of selling hospital supplies and equipment, and succeeded in interesting Magee in financing the machine if Huff could find a buyer. Huff approached Perry who was at first very dubious concerning the merits of such a machine but finally decided to accompany Huff to examine the Marshall poster drier in Seattle. Perry examined the machine while in operation, questioned the Marshalls and their plant foreman and was advised that paint and paper and atmospheric conditions were critical items in the operation of the machine—that certain types of paint faded and that experimentation was necessary to work out the proper technique. (Appellant claims it was the materials used and not the machine which caused Perry's later difficulties.) Magee was with Perry and Huff in Seatle during their inspection of the Marshall machine, but according to appellant, and it is not refuted, the only comment he made to Perry regarding

the machine was that it looked like a good machine and he ought to have one.

After the Seattle trip Perry requested Huff to build a similar machine for him but to be designed somewhat differently to meet Perry's special needs. Magee agreed to finance the construction and sale provided Perry would execute a written contract of conditional sale and make a substantial down payment.

Approximately six weeks after the contract was executed the machine was installed. According to appellant when Perry failed to make payments as provided in the contract and demand was made he complained for the first time that the machine caused the paper to crack, paint to fade, caused a high degree of waste and broke down.

Appellant contends that in view of the written contract the court could not ignore the parol evidence rule to permit the introduction of evidence of oral warranties to vary the terms of the written contract. The court made findings as to oral warranties basing its judgment thereon. Plaintiff admitted having read and understood the contract. Paragraph 6 of the contract reads: "It is further understood and agreed that this contract contains the complete agreement between the parties hereto, that no representations or warranties, express or implied, have been made except those which are set forth in this agreement; that purchaser has made an independent investigation of the property and has relied solely upon his own investigation with reference thereto in entering into this contract, and has placed no reliance nor acted upon any representation or warranties upon the part of Seller or Seller's Agent not specifically set forth herein." Appellant claims the judgment is against the law because the court ignored the parol evidence rule, permitted, over appellant's objections, evidence concerning oral warranties, and devoted a substantial portion of the findings to alleged breach of oral warranties. The court found that defendant made a minimum of six separate and distinct oral warranties concerning the machine, which warranties were untrue and thereupon concluded that the written contract was null and void and wholly ineffective for any purpose. The court further ignored the disclaimer of warranty rule under which a buyer who executes a written contract containing a disclaimer of warranty is bound by that provision. Respondent answers that the parol evidence rule shall not apply to establish fraud, that parol evidence is admitted not to vary the terms of a

written instrument but to prove that it was procured by fraud.

The answer is sound so far as it goes but it does not settle the controversy. Under the rule of *Speck* v. *Wylie,* 1 Cal.2d 625, 628, *supra,* parol evidence is admissible to prove fraudulent representations in the procurement of a written contract for the purpose only of rescission but not for damages for fraud. The principle of the decision is that a party is not to be bound by his written waiver of oral representations made by an agent which are shown to have been fraudulently made. The controlling factor in such a situation is that these representations were fraudulent, made with the purpose to deceive, and had been relied on by the contracting party. That factor is not present when the representations were not fraudulently made, were not relied upon as warranties of facts, but were mere expressions of opinion. (Civ. Code, § 1732.)

 Here the respondent relied on six distinct warranties. As stated by respondent the first was that the Merco tube which Huff proposed to install in the new machine "was a tube specially *designed* to dry paint without affecting the moisture content of the paper upon which the paint had been placed." All the witnesses agreed that this was one of the purposes for which the Merco tube was *designed.* But the respondent testified further that he expressed doubt as to the efficiency of the tube, that he did not believe Huff's statement that the new design would solve the difficulty of the moisture content of the paper. Manifestly this statement of Huff's as to what the new Merco tube would accomplish was merely an expression of the opinion of Huff which was taken as such by respondent who immediately expressed his view that the opinion was not sound. An expression of opinion not relied on by the complaining party does not support a rescission. (Civ. Code, § 1732.) No actionable fraud is shown where a party makes his own inspection before the contract and the latter is performed according to his own specifications. (*Carter* v. *Seaboard Finance Co.,* 33 Cal.2d 564, 570 [203 P.2d 758], citing *Nielsen* v. *McKenna,* 8 Cal.2d 690 [67 P.2d 1044].)

 It is alleged that Huff represented that the new machine could be successfully used for multicolor operations and that the paper would be moist enough to fold without injury to the paint. The respondent did not believe these statements and, because of his disbelief, he accompanied Huff

to Seattle to inspect the Marshall machine which was in operation there. At that time Mr. Marshall, who had been in the business for 30 years, advised respondent that all these machines had mechanical difficulties—that paint and paper were critical items, that considerable experimentation was necessary to reach satisfactory results. Thereupon the respondent expressed his disbelief in Huff's statements and offered no evidence that he at a later time changed his opinion.

It is also contended that Huff represented to respondent that the new machine would dry colors regularly and without removing the moisture content. This is essentially the same matter as that just considered—both are based on respondent's testimony that Huff represented to him that the new Merco tube was "designed" to remove these difficulties. All the witnesses agreed that the new tube was designed for that purpose. All agreed that if this tube performed as it was designed it would be a substantial improvement in the operation of such machines. All through the negotiations respondent was apprehensive and told Huff that he did not believe his hopes could be fulfilled.

■ Both parties recite in their briefs a quotation from respondent's testimony that, after the return from the Seattle trip, Huff told the witness: "Using the Seattle machine as a model, I can almost guarantee that the machine will work." (We are unable to find this exact language in the reporter's transcript but both parties agree on the quotation and cite it in their briefs so we may accept it as correct.)

Now what does "almost" mean when we come to the question of warranties? Does it not imply an expression of hope and an opinion rather than a promise of fulfillment of the desired result? When King Agrippa said to the apostle Paul "Almost thou persuadest me to be a Christian" surely the apostle could not conclude from that statement that he had made a convert of the Roman tyrant. And when we sing the old song

> "Almost cannot avail,
> Almost is but to fail."

we are impressed with the admonition that "almost" is always somewhat less than the ultimate. When the respondent by his own evidence disclosed that after the Seattle trip (before which all the statements relied on as warranties had been made) Huff assured him that he could "almost guarantee" respondent that the machine he planned to construct would work, and when the respondent thereupon expressed the belief

that it was impracticable, he belied his own testimony that he relied on the previous statements as warranties of perfection or guaranties that the machine would work as desired. When therefore Huff was directed to go to work in accordance with the specifications dictated by respondent the prior assertions by Huff as to what he expected to do or what he hoped to do were all summarized in his final statement that he could "almost guarantee" or "practically guarantee" that the result would be successful. But almost, but not all, of a guaranty or warranty cannot form the basis of an action for fraudulent representation. It was for that reason apparently that the parties entered into the written contract wherein respondent expressly stipulated that he made his independent investigation and that he had placed no reliance upon any representation or warranty made by the seller's agent. This waiver disclosed that respondent was fully aware of what "almost" a guaranty meant.

Hence when the respondent testified that Huff told him he could "almost guarantee" or "almost" warrant that the machine would do the work desired, no reasonable man having respondent's years of experience in the operation of similar machines could have relied on the statement of the inexperienced engineer as a warranty of perfection.

Without further discussion we conclude that the case comes squarely within section 1732, Civil Code, since all the representations specified were but expressions of the hopes and the opinion of the seller's agent, and since the respondent testified as to all these statements that he frequently told the agent that he did not believe that the proposed changes were practical or that they could accomplish the desired results. Similarly when the respondent testified that Huff said he could "almost" or "practically" guarantee success he thereby effectively disclaimed any reliance upon past statements of Huff and disclosed that he made an independent examination before he executed the contract. No actionable fraud is shown under such circumstances (*Carter* v. *Seaboard Finance Co.,* *supra,* p. 570.) Other questions raised by appellant do not require consideration.

Judgment reversed.

Goodell, J., and Dooling, J., concurred.